Good morning, your honors. Assistant State's Attorney Alan Svelberg representing the people of the state of Illinois. Karen Diamond Good morning, your honors. Karen Diamond, Assistant Public Defender representing the Office of the Public Defender. Have you folks discussed who's going to go in what order here? Not that I'm sure why the state is even standing here other than to, you know, improve our view. Well, your honor, I mean, to answer your question, I think, although the state and I agree on these crucial issues, I think there are some doctrinal differences between us in terms of how the opinion would be written and each of our views. My understanding was I would go first, the 15-minute, the state would go second, and the intervener would go third. Okay. All right. That's fine. I'm open to different suggestions. Yeah, that's fine. We'll go along with that. I mean, it's an unusual circumstance here, but we can play improv here. All right? Thank you. Thanks. Your honor, my name is Stephen Richards. I represent the appellant, Tiffany Elkins. As your honors are aware, this is the appeal from Tiffany Elkins' conviction for first degree murder and her sentence of 50 years. She lost at trial. She was represented by the public defender. That's not unusual. She fired the public defender. That's not unusual. That happens all the time. She hired a private attorney, also something that happens all the time. What happened from there, though, I think is very unusual and, in our view, very distressing because Attorney Bell Eunice was hired to do the motion for new trial. His appearance was granted. And then he tried to do the motion for new trial and possibly sentencing, but the motion for new trial first. The first thing he wanted was police reports. The state wouldn't give them to them initially. The judge said, you don't get them. You don't get police reports. He also wanted the public defender's file, and the public defender refused. He then, once he couldn't get it voluntarily, he filed a subpoena. Without the public defender moving to quash the subpoena or even filing any objection, Judge Murphy, sadly now deceased, quashed the subpoena. Basically on the grounds that there's no discovery. Presumably there's no subpoena power at this point. Mr. Bell Eunice was entitled to nothing. The state eventually gave him police reports, but he didn't get the remainder of Attorney Justice's file. Attorney Justic put forward the position which the judge accepted that the entire file was work product. It was the public defender's property. It was work product. Couldn't go to the successor attorney at all. There is even a final twist. What do you think the judge should have done, Mr. Richards? The judge should have, first of all, not quashed the subpoena, number one. Two, had the public defender moved to quash the subpoena, he should have denied the motion to quash. He should have enforced the subpoena, and the entire file, the public defender's file, should have gone to Attorney Bell Eunice. Regardless of whether or not it's core work product or discovery. Correct. There is no such thing in our view. First of all, in our view, and the state agrees with us, work product is a privilege which can be asserted by one attorney against an opposing attorney. Why does the state get to agree with you? On what basis does the state get to have a say in this? Well, their saying is, I guess their basis is that they are the appellee and they're free to take a position as to what happened below. I mean, the state does concede error often. In this particular case, the public defender was obstructed from the beginning to the end. At one point, the judge said, okay, the state wanted the public defender's file because they wanted to defend a contested hearing as ineffective assistance. They wanted the investigative slips, they wanted notes, and at first, the judge said, sure, the state gets them. And Bell Eunice then said, well, if they get them, why can't I have them? And at that point, the judge said, well, nobody gets them. You're going to do a hearing at which you're questioning Attorney Justice on such matters as why he didn't have an expert on identification, how many times he had visited the client, whether he had talked to witnesses. And all the documentation as to that, his investigative slips, which from my experience as a public defender I know exists because you can't, as a public defender, send out an investigator to go across the street without putting in a slip. The expert witness, again, no public defender just goes and gets an expert witness. You have to get permission. You have to get funding. So there's a record of that. Every public defender is encouraged to keep a half sheet of documentation of what they do on each court date and in between court dates. That was also not tender. Almost every court in the country without exception has held that work product cannot be asserted against a successor counsel and that as the successor counsel, the entire file belongs to the client where successor counsel is representing the client. I don't know where you're getting those cases from because I haven't seen them. Well, I think they're cited in my brief in detail. Not quite that way. Well, in terms of. . . I mean, I think you would agree with me that this is somewhat of a novel issue, wouldn't you? Well, it's a novel issue definitely in Illinois because there's not one case cited by either side either way. You know, as a former public defender myself, I have a real concern about thought processes and trial strategy and things of that nature as opposed to police reports and interviews of witnesses and things like that. You don't see any distinction between that? Your Honor, I recognize your concern, but I do not, and I'll tell you why I do not. So when you handle appeals, you get the file from the public defenders all the time, right? Actually, I do. You get the entire file all the time? I'm not sure if I get the entire file. I get what they give me. I know that sometimes Ms. Diamond, who's in charge of these matters, will take out materials which are otherwise privileged. For example, medical records, if there's a different privilege than an attorney-client privilege involved. Whether she takes out work product, you'd have to ask her. I don't know because I just see what I get. I do often get things such as investigative slips. I don't think those are taken out. I do get police reports. I have to get a release from the client, but generally she gives those things over. Now, Your Honor, I know you're an ex-public defender. I understand your concern, but as to notes, thought processes, and those things, you have to understand that to prove ineffective assistance of counsel, you generally have to demonstrate that the prior attorney did something wrong, that their strategy was flawed, or they had no strategy, or they overlooked something obvious. And with respect to those matters, there is no better evidence than notes, memoranda, research, cases in the file, things of that sort. In this particular case, Attorney Justice basically said, since I take notes on the file or take notes on police reports, you can't get those police reports because they have my notes. That is a position which is opposite as to deprive successor counsel the ability to raise claims of ineffective assistance in any meaningful way, as was done here. How was he supposed to cross-examine Attorney Justic on the expert witness when he didn't know the name of the expert witness? He just had Justice's word that I consulted an expert witness on identification. I think everybody perhaps could agree that the process that occurred in this case was probably not the best. However, there still has to be, I think, some way of determining what the successor counsel gets, and who makes that determination. Well, the easiest way to do it is to agree with myself and the state that successor counsel gets everything, and the only cases I found which says that things are excluded are things like internal documents, which were considered to be in the leading New York Supreme Court case, which, by the way, basically says you give over most everything. It says, well, there might be some documents like intake documents, administrative documents, things about whether we're going to sign it to one attorney or another attorney. There might be such a category. The state and I did not believe that such a category would be excluded. But that's it. I don't think – What about all of the matters that were raised by the intervener here, page 24 of the brief, where they list, I don't know, let's say about ten different things that might be in a typical file, including a defense attorney's, the public defender's, realistic appraisal of its chances of prevailing, the assessment of the prosecutor that they're up against, some notes about maybe not so flattering about the jurors. Let's say they're not quite sure if this is the best judge for this particular case in front of them. What about those things that are raised by the public defender's office, that if your approach is granted and you get everything, then you get to look at all that too? Why are you entitled to look at that? We are entitled to look at that because it is evidence relevant to a claim of ineffective assistance of counsel. The attorney's thought processes or their strategy on a claim of ineffective assistance of counsel is essential. Now, the real problem with getting the file often is it often will show that the defense attorney will say something like, for example, the client told me they were guilty and I couldn't put them on. Or I talked to witnesses and the witnesses said, I'm sure the state would like to see that. Well, put it this way, if a defendant. No wonder they're agreeing with you. Well, put it this way, if a defendant says that I want to proceed with ineffective assistance of counsel, they're going to have to take the bad with the good. If there's material in the file which hurts them, first of all, the state is going to be entitled to it because the state is entitled to defend the claim of ineffective assistance of counsel. But that's on the defendant. That's the defendant's interest. These are things which might hurt the defendant. But if the defendant makes a choice, I want the file because I need the file to litigate the claim, then it's on the defendant if there's bad things in the file. What about the attorney's own privacy interest in his own work product, his own mental impressions, theories? You don't think that he has one, he or she? No. And I'll tell you why. Privileges are limited in our legal system. Privileges are designed for particular purposes. Our attorney-client privilege, it's designed to encourage the client to be forthcoming. No client will be forthcoming if an attorney is going to give something over. But, by the way, a defendant who raises a claim of ineffective assistance waives attorney-client privilege. Everyone knows that. It happens all the time. There's other privileges, like marital privileges. But a defense attorney's musings as to the case and his evaluation of the case is not done, does not reflect any private interest. It's done for the purpose of helping the client. That's all the attorney is there for, to help the client. And those notes, if they're necessary, as they almost always are, to claim ineffective assistance, should be given over. I think that in this case, we're probably not talking about long essays by Attorney Justic about the nature of the case. That's my experience with public defender's files. But even if so, those should be turned over. Historically, as a defense attorney, what's been your experience with respect to getting a file of a predecessor counsel? My experience has been as follows. First of all, in terms of private counsel, and I get them all the time, generally if I get a release from the client, I get everything. And it doesn't appear that anything has been left out. There's something else that didn't occur in this case. What? There was no release from the client. Correct. But the public defender never defended on that ground. And you wouldn't need a release from the client if you have a subpoena. And if the public defender really thought the release was important, all they had to do, for example, when Sue Smith went to court, is say, listen, we need a release. That would have been done in two seconds. I think the bigger issue is, doesn't someone have to bring it to the court's attention that maybe there's some things in this file that shouldn't be turned over? Yes, and the person- And shouldn't that be the person whose file it is? Correct. And all they said, and they had many opportunities and many court dates, is they went along with the file being suppressed. In fact, there's a later court date, which I didn't get a transcript of, which according to half-sheet shows that Judge Murphy wouldn't even impound the file for appellate review. This was a total, complete stonewall from beginning to end. Attorney Justic didn't say, listen, look at it in camera, take out stuff like that. He said the whole thing- Well, you're not saying that either. You're not saying give it to us, let's look at it in camera or have the court look at it in camera. You're saying give me the whole file. Correct. Their position below was, we're not going to give one document. We're not going to give one page. And yours is, we need everything. We're entitled to every single document regardless of what the content is. Correct. Isn't it perhaps possible that their position is correct? It's possible, but our position, which we're not backing off of, is our position is correct, and particularly where in this particular instance the public defender never asked for in-camera inspection, never said look it over, give them some stuff and those stuff. Mr. Richard, you conceded yourself in your own argument that there are certain things that perhaps shouldn't be turned over. So what about those documents that even you would concede shouldn't be turned over? How is- who decides that? Well, Your Honor, all I said was there's one New York Supreme Court case which says that there are some documents, internal administrative documents should not be turned over. I did not agree that those should not be turned over. Frankly, I think those should be turned over as well. Is this analogous at all to doctor-patient privilege? If you're a plaintiff's attorney in a Med-Mal case, you subpoena all the medical records, and they have handwritten notes all over them and times and dates and things that happened and things that didn't happen, and the plaintiff's attorney gets it all, right? That is an excellent analogy and the correct analogy. A patient suing his doctor for medical malpractice first of all waives any doctor-patient privilege, of course. Which this defendant has also done. Right. Any attorney-client privilege that was affected justice was waived the moment that motion was filed alleging ineffective assistance. There was no privacy interest she could assert. And, in fact, if during discovery on the medical malpractice claim you found that the attorney wasn't- the doctor or the hospital wasn't turning over everything, there would be a series of other things that you would do to get them in a penalty box for it. You bet. And in this particular case, that's what we would have done, or Attorney Val Yunus would have done, had the judge let him do it. But he was cut off at the knees. He was not allowed to do anything. He couldn't subpoena. His requests were denied. Every time, the only thing he got was police reports because the state decided at one point, well, we'll give them over anyway. In your experience, both as a public defender and as a private practitioner, what percentage of cases on appeal in criminal cases involve a claim of ineffective assistance of counsel? Well, my experience is that in terms of-first of all, in terms of direct appeal, I would say a fair number. I would say in my own practice maybe 10 to 20 percent. What about post-conviction? I would say closer to 80 or 90 percent. All right. Involving ineffective assistance, correct. And in terms of looking for Illinois precedent on this issue where you claim you're entitled to everything, we really don't have anything. So what do you think is going to happen to those numbers if your position, you know, gleefully joined by the state were to be adopted by this court? Well, Your Honor, frankly, all that I think that would happen is that certain matters would go quicker. And many claims of ineffectiveness would be shot down pretty quickly because many attorneys in their files are going to have notes or strategy which defeats claims of ineffective assistance. And as Your Honor knows, in terms of the first prong of Strickland, the bar is very, very high. An attorney can make a mistake. An attorney can do something another attorney wouldn't do. But as long as it's reasonable, it's okay. So this should, in your opinion, cut down on the claims of the incidents of Strickland claims? The incidents of successful Strickland claims, yes. In the truth outs from the conflict. Truth never hurts. What is in the attorney's notes is truth, at least as to what they were thinking or what they were doing or not doing. And why wouldn't you want to have the truth come out in such a proceeding? Let me also say that in terms of claims of ineffectiveness on direct appeal, those are not really involved here because we can't bring in stuff outside the record. So the attorney's file is not important. If it's litigated on direct appeal, it's either obvious from the transcript or it's not. That's the end of the story. In terms of PCs or motions for new trial, obviously this is important. As I pointed out in my brief, I think in a critical issue, an issue that the court has not dealt with yet, is there should be a defendant of holding that you're entitled to a subpoena that Dutch has taken for a motion for a new trial. That has to be the law. If one was not entitled to that, how would one subpoena witnesses to a sentencing hearing if one had no subpoena power? A subpoena that Dutch has taken, and again, there's no law on this, unfortunately, except for the analogy of Peabody, Carey v. Fisher, has to be that you have the right to file subpoenas. Now, of course, those subpoenas can be quashed on different grounds, but this was a judge who was saying, no subpoenas, no discovery. Do whatever you want, but you're not getting any documents, not with my help. So I don't think that this rule is a bad rule. It's a good rule. Let me also address something that the public defender did bring up, which I think is something they're saying that, well, if you make people give up their notes, nobody will ever write anything down. And, of course, that would be true with doctors, too, possibly. But, you know, that's just the way it is. The same claims were made about police reports years ago. The same claims were made about the GPRs, that officers wouldn't be candid if they had to give over their GPRs. It hasn't happened. People write notes when they need to write notes, and they'll give them over. Nobody's privacy interest, in my view, or in our view, is going to be harmed by this rule. The rule that we're operating under right now says that you can't discover work product to the other side. Correct. But this is the same side. Correct. This is the defendant's attorney. Correct. If you were a private attorney, and I thought I heard Justice Kagan ask this question, but maybe in a different way, a private attorney, and you have a defendant, and he says, you know, I really don't like your beard, I'm going to go hire somebody else, you would turn over your whole file to the other attorney. I do it all the time. I don't. I do it all the time. You might not like it, but you do it. I do it. I mean, I don't write a huge number of notes, but, sure, I do it. I mean, particularly at the trial level, or even on a motion for a trial. That's happened to me rarely. But, sure, on a motion for a new trial, when somebody's coming in and saying, you know, the client doesn't like you, they're going to bring in ineffective assistance, I give over the file, they want a subpoena me, I'll tell the truth, that's it. And if there's something that you don't want to, I'm sorry, I don't mean to interrupt you, but if there's something that you don't want to turn over, then what do you do? Would you bring it to the attention of the judge? Judge, I don't think that counsel should get this. It's my work product. I want you to look at it in camera. I have never done that, would never do that, and I think it's the wrong thing to do. I think I, as an attorney, am a servant of my client. If my client gets a new attorney, that attorney is entitled to... So you were a prior public defender. Yes. And you're telling us that you used to turn over your entire file all the time. I'll give you an example. It's just a no. Yes. Well, first of all, in the old days, we didn't have such procedures. I mean, it's just a matter of me, a private attorney would call, and I would get the file copied and turned over. Do you remember any policy in the Public Defender's Office with respect to that? Actually, I do not remember. This was a long time ago, before more efficient, organized administrations like the current one. No, there was no policy. I would order the file from the warehouse. There was no Karen Diamond. I'd ask my secretary to make a copy, and I'd send the copy over, period. That's on appeal, but what about when a new attorney would come in? Sure, same thing. Same thing. I never held anything back or even thought of holding anything back. I remember in one case, a natural life case. I'm just curious because I'm not aware if there had ever been a policy about this. No, there was no policy I knew of. I can remember after I left the office talking to Mike Morrissey about a particular file. He got the file. He was showing me some stuff, and I'm pretty sure it went all to private counsel, who was pro bono, including my notes, which were illuminating, I think, as to many things in that case. But I remember reading those. I remember being impressed that I had done so much work trying to track down a particular issue. But, no, I have no problem with that, or with my notes or memorandum going out to successor counsel. If you would have a problem with a counsel, someone other than yourself, obviously, who may have a problem with turning over a document or a memorandum or anything, bringing it to the court's attention and saying, Judge, I just don't think this should get turned over. It's a work product, and I don't want to turn it over for whatever reason. Well, I have no problem with a counsel bringing it to a judge's attention if they so choose, but there has to be a privilege to serve it. And I think there's no work product. Maybe there's no objection from a defense counsel, in which case, great. File gets turned over. All the information gets turned over. What I'm concerned about are those instances where there is an objection. What should the procedure be? The procedure should be, first of all, the judge should have the attorney specify what the privileges he's asserting are. If it's a work product, it should be denied. If it's something else, like it might be, maybe involves another client. A work product, it should be denied without even knowing what it is that they're objecting to. Correct. Don't you think the attorney should have to identify what it is and why they're objecting before the judge should be expected to grant or deny the objection? Not if work product privilege does not apply to successor counsel, which is our position. You're giving a lot of power to the attorneys. Well, there is no instance, I think, in which it would be misused. The subpoenas always have to go through the court anyway, and anyone can move to quash. But I don't think a motion to quash. So you don't think any kind of oversight would be appropriate or warranted? In terms of these files, no. You know, again, well, I would qualify that to say that there may be some things in a file which have some other privilege attached to them. For example, if there's a protective order, maybe the attorney needs to go to the judge and say, listen, I need to have – oh, this is a situation that does occur fairly frequently. Protective order, let's say medical records. The attorney says, you know, there's a protective order. You have to read the protective order as the medical records entered previously, in which case I say, yes, of course, there's a protective order. I'm going to be bound by it too. Okay, if you could – Say, for example, that even though we have wonderful, dedicated attorneys in the state attorney's office and the public defender's office, there are some cases that just don't go right, and there is ineffective assistance to counsel. Shouldn't it be the public policy that we find out about that instead of having people convicted wrongly? Absolutely. Absolutely. And in this particular case, let me say that the attorney – there were some serious claims about attorney justice. One claim, for example, was he never showed Tiffany Elkins police reports, and he admitted he didn't. Another claim was that he only visited her two weeks before the trial in jail. Other times he saw her downstairs in Markham behind glass. She had some concerns. Maybe they're true, maybe they're false. But they need to be litigated. They can't be litigated without the file. Thank you. Good morning again, Your Honors. This is the state attorney, Alan Spellberg, representing the people. And let me begin with explaining what our position is in this case and why we have that position. As counsel mentioned, we are the appellee in this case. Tiffany Elkins was convicted of murder and has appealed it. On appeal, she claims that she was deprived of the opportunity to a fair post-trial proceeding, in that her successor attorney was not allowed to receive the file that was generated by the public defender's office. Upon reviewing that and looking at the law and the facts of this case, we determined that, unfortunately, everyone involved below didn't understand the correct status of the law or the correct proceedings and procedures to utilize in such a situation. Instead, the state's attorneys, the public defenders, and the judge all seemed to take the position that there would be no right to the successor attorney, Mr. Bill Yunus, to see the file in any way, shape, or form. However, for some strange reason, the state's attorney and the public defender believed that the state's attorney had the right to see at least portions of the file to defend the claim against ineffective assistance of counsel. After looking at the law, in particular, the case law that existed in Illinois, the Twin Sewers case, which recognizes that attorneys have the right to retain their files in order to assert a common law retaining lien to receive their fees, as well as the ISBA ethics opinions regarding when a work product privilege can be asserted. In particular, when they can assert it when a former client wants the file. We reached the conclusion that, in this case, Judge Murphy reached the wrong conclusion and engaged in improper proceedings. And so the position that we've taken, in order to ensure fairness to the defendant and the proper development of the case law here in Illinois, is that this court should take the position, as the defendant has requested, that the work product privilege cannot be asserted against a former client. Now, I want to make this very clear, that we are not saying that we, as the prosecutors in this case, have any right to see that file in this regard, or that the work product privilege cannot be asserted against us. Well, no, because you've already turned over the discovery, the police stuff, the investigators stuff, blah, blah, blah, evidence to the defense. Certainly. You've already seen that stuff. We've already seen that. And you're not saying that you want what we have been loosely calling work product around here. Absolutely, Your Honor. We are not making that assertion in any way, shape, or form. And I don't think you're also saying that every case is the same. That in this particular case, the public defender didn't say anything about work product. They didn't say anything about it at all. Your Honor, I'm not sure that's entirely correct. But although the public defender may not have actually said work product, Judge Murphy brought it out repeatedly, saying that the attorney's files inviolate work product. He really sort of shut down any discussion of any way of resolving this issue quickly. And you'll see, actually, in terms of your question, Justice Cogman, the proper remedy that we suggest. We do believe that the proper case law, the proper rule should be that work product shouldn't be applied. It should apply to an entire file. But as we point out on page 36 of our brief, we offer as the alternative a remand for the. . . I'm sorry. Did you say you believe it should not be applied to the entire file? No. We believe that the entire file should be available to a successor lawyer. But if that is not. . . The entire file is someone other than yourself. Successor lawyer representing the client. So whether it's a public defender's client or anyone else, whether it's in a criminal case or in a non-criminal case. Why are you able to say whether some other attorney's got to turn over their file? Pardon? I'm sorry? Why are you able to weigh in on whether or not a defense attorney should or should not turn over their file to a defendant? Your Honor, all we're saying is what we believe the status of the law is, based upon what the current law in Illinois is, the current case law, and other precedents, as well as in other states. So in the Dixon case, if I read it correctly, in the Dixon case, the state conceded an oral argument that all materials in its possession should be handed over. So now you're saying all material in your possession, their possession, they get everything. Your Honor, if I. . . Back up the truck. The Dixon case was obviously a very different factual scenario, because that involved a post-conviction proceeding in which the attorney, the defendant, chose to go pro se and then demanded to see the attorney's file that his previous public defender had been utilizing to represent him in the post-conviction proceeding. The judge said, no, you don't have a right to it. You don't have a right to discovery in this unless there's a good cause shown. And the judge engaged in a document-by-document determination as to which pleadings and which material the defendant should get in that case. Below, the state attorney's office took the position, no, that we don't have to give you anything either, because you don't have a right to discovery on post-conviction without good cause shown. On appeal, when it reached the oral argument, we reexamined the case law. We made a determination yet again that the availability of information to the petitioner in that case, the defendant in that case, was premised upon the fact that not that he was seeking discovery, but that he was acting pro se and that he had a right to certain information as the successor representative of himself in that regard. Okay, so do you believe that, for example, if a defendant wishes to proceed pro se in a case pending in the circuit court, criminal division, that the state's attorney, I believe, is responsible for getting a file together and giving the defendant discovery, am I correct? That's correct, yes. So is it your position that the defendant would be entitled to the state's work product, impressions, memorandums, strategy, things like that? No, Your Honor, and as I said, that's the difference between what's going on here. This shouldn't be about work product because we're talking about a successor attorney. The work product privilege was intended to prevent disclosure to your opposing counsel. That's what the case law says. That's what Hickman says. That's what the ISBA ethics opinions say. That it's all about whether or not you have to disclose your mental impressions to your opponent. And as Justice Kuczynski pointed out, there is a distinction between discovery, police reports, things of that nature, and actual core work product, opinion, strategy, things that a lawyer is doing. Absolutely, Your Honor. Absolutely. And that would apply, and that could have applied here had there been sort of a better understanding of the process. And it sort of seems like that all got glommed in together into one big ball in this case. It absolutely did, Your Honor. And that's why, as I was trying to say on page 36 of our brief, you'll see that we have the alternative recommendation that this court remanded back for a determination before the trial judge where the public defender can assert their privilege over each and every document they believe a privilege would apply to. But that didn't happen here. And strangely, as I read the public defender's brief, they seemingly had disclosed a good chunk, if not all of Ms. Elkins' file to Ms. Elkins to another attorney. There's a footnote specifically saying that. So I'm not sure where the work product privilege even exists anymore in this case. But that's a question for a prior effect or a trial judge at a different day. Okay. So, first of all, the state attorney's work product wouldn't be available to the defendant because you're not the defendant's attorney. Yes. And you're the other attorney. Okay. Fine. But the public defender is the defendant's attorney. And that's very clear. The law only talks about the other side. It's the same side we're talking about. But when you get to work product, I would be worried that, say we say, yep, defendant who wants to change lawyers, hires a public defender, hires a private attorney, that six months from now, public defenders will have just decided they're going to put everything in memorandum form to their boss so that it's all work product. And so the only thing the defendant gets on discovery is the same stuff that you handed over to the public defender anyhow and does not have the advantage of then knowing what did the witness say in the first interview and what did the state attorney ask him, what did the defense attorney ask at trial. And those things, it seems to me, are very important for a defendant to be able to pursue an ineffective assistance of counsel claim. So there's sort of yin and yang going on here. I think that it is a better process to say, overall, a person who has an attorney appointed or hired, if they're appointed in Cook County, they're appointed and being paid for by the taxpayers and presumably all defendants are taxpayers. They have a right to their own attorney's file. That's the whole file. And if the attorney feels, wait a minute, this particular item shouldn't be resolved because in this memo I happen to write that the judge is an idiot and I know for a fact that he's a dope. Okay, fine. We don't want to release that because we don't want to make all the judges mad at us. We don't want to make this judge mad at us. So they go to the judge and they say, you know, here, we don't want to release this to the defendant. And I mean, I think that there has to be a process, but I think there has to be a very narrow process and that the attorney that's being asked to turn over the records has to specify what he or she doesn't want to turn over and some sort of generic reason why. Your Honor, I don't disagree with you at all, and I think the case law as it exists currently in Illinois and in other states is consistent with that. It has always been clear that whatever an attorney chooses not to disclose, whether it's pursuant to attorney-client privilege, work product, whether to his own client or to private, that there is a mechanism of filing a motion to quash and filing a privilege log and explaining why that was not disclosed. But that didn't happen here. But you do have to ask yourself, why would there be a privilege against your own client? Well, Your Honor, that's our position, that there can't be a work product privilege asserted against your own client, and that's my reading of the case law, in particular the Iowa Supreme Court case and the Gottschall case that we cite, and that's consistent with the ISBA ethics opinion which has existed. And importantly, in the ISBA ethics opinion that we cite from January of 1995, they specifically make the point that the law of work product is not relevant to the inquiry of whether or not you have to disclose your file to a successor lawyer because your client now has a new lawyer. And the reason why is because the whole notion of work product is about what information should be disclosed and tendered to your opposing counsel, to your opponent, because you shouldn't make it easier for them to litigate that issue. But you certainly don't want to hinder your own client's ability to litigate their issues. And that's all we're discussing here. Your Honor, I'm not in any way taking the position that defense attorneys should be deprived of the opportunity to have the thoughtful process they need to go forward for trial. In the list of ten points that is included on page 24 of the public defender's brief, absolutely all of those points would be work product and would be prohibited from being disclosed to the prosecution. To the state, right. Absolutely. But shouldn't the successor attorney have that information? In this case, we're in a post-trial phase. What if it was a pre-trial phase? Shouldn't the successor attorney have all that same information to know what work has been done on the case to be able to allow that new successor attorney to provide the effective assistance of counsel that his client is entitled to? And that's the sole reason for our position. Our position is as to what the law is currently and what it should be. We recognize that this is a difficult process and procedure. And unfortunately, it was not well litigated below. I take responsibility on behalf of the state attorney's office for that as well, because we participated in what was truly a failure to understand what was happening before the court. But this court now has the opportunity to clarify what the law is in a manner which is consistent with the purpose of the work product privilege, with the purpose of the law regarding who owns the file, allowing for the effective assistance of counsel to be fully litigated when appropriate. And that's all that we're saying. That's our position. Is the holding in Dixon, then, in your opinion, overly broad? I think the holding in Dixon is broad under the terms of the facts of that particular case. And it could be construed, I think, that Justice Mason's dissent makes the majority holding seem broader than it really is. As I read the opinion in Dixon, it is really premised upon sort of the very narrow factual circumstance of a defendant choosing to go pro se in the midst of a post-conviction petition, trying to get the exact same file that his attorney was utilizing before he chose to go pro se. I believe that Justice Mason makes a similar mistake that Judge Murphy made here in this belief that there is this work product privilege that can be asserted against the client. And that's our sole point. Our view is that this is not unique to public defenders. This is not unique to criminal defense attorneys. This is just a law for attorneys to allow for the successor attorney to ably and capably represent their clients, not in anything that the state's attorney wants the information from. And I would note that in the very few instances where there is a successor prosecutor, let's say a special prosecutor is appointed in that regard, we box up our file and tender the entire thing over to them. We don't retain anything back, and we have very much work product privilege, our thoughts about the witnesses. And the reason why we do that is because we know that our successor prosecutors need to have that information as well. If there's no further questions, we would ask this Court to reject the defendant's arguments in regards to the substantive issues that he raises, but to remand this matter for further post-trial proceedings. Thank you. Okay, thank you. From the back bench. May it please the Court, my name again is Karen Diamond, and I represent the Law Office of the Cook County Public Defender. Perhaps I should begin by stating what normally happens when we receive a request for one of our trial files. Normally it will come to me for a request from a private attorney, and I will turn over to that attorney all non-privileged documents, and that would include police reports. Sometimes police reports have been converted into work products because some of our attorneys write notes all over the police reports. But certainly when it comes to any clean copies of the police reports, we do turn those over. If it is a subpoena that I've received, and we receive many subpoenas, both from federal courts, state courts, civil divisions, criminal divisions, if the rules require, I provide a privilege log telling the requester what it is that we are withholding. If I receive a consent, which I didn't in this case from Mr. Valianos, but if we receive a consent, we also turn over any attorney-client correspondence, any medical records of the defendant. There's already a procedure in place for turning over files or retaining documents that you believe should not be turned over and keeping a privilege log so that if somebody wants to object to a court, they have the ability to do so. That's correct. And there have been a number of instances where... How long has that policy been in place? Over six years. I couldn't tell you exactly how long, but over six years. There are instances where there are disputes as to whether what I have withheld should be properly withheld, and in instances I have provided copies of our work product, both to federal court judges in a number of instances and a number of instances to state court judges. And let those judges review our work product to see whether they are properly withheld as work product. In this case, I think what we... Can I just ask you another thing? Yes, go ahead. How would this process work with a self-represented litigant? Well, that makes it much more difficult, much more difficult, because in those instances we would have to withhold discovery, too, per the requirements of Supreme Court Rule 415. But normally what happens if it's in the middle of a criminal trial, my understanding is that the state actually provides materials to the pro se person who has gone pro se midway through a trial. I hope that has answered your question. But I did want to elaborate on the concerns and the interests of the public defender. She obviously has an interest in ensuring that her attorneys, her assistant public defenders, write down their impressions, their thought processes, their strategies in their files. Her attorneys work on perhaps hundreds of cases during the course of a year, thousands over the course of their careers. And naturally they cannot remember, simply remember, every assessment of a client, every theory that they had, every evaluation of a piece of evidence. They absolutely must write those down if they hope to provide adequate and accurate representation to their clients. And it's also the case that several assistant public defenders may work on a case over its pendency. Due to turnover in the office, the attorneys that are leaving need to write things down in their files to the attorneys who are taking over the cases. Writing things down is the only way that this type of work product information can be reliably preserved and conveyed to other trial attorneys who are working on the case. But assistant public defenders' inclination to write things down will definitely be chilled if those assistant public defenders know that in the future other private attorneys and perhaps the clients themselves will be able to rifle through their notes, notes that they had previously thought would remain confidential. I don't understand why you think there's a privilege against your own client. Your Honor. What does it say anyway that there's a privilege against your own client? Your Honor, as we look at the case law that's come down since Hickman v. Taylor over 70 years ago, there's many, many cases which have acknowledged the privacy interests that attorneys have, a privacy in their own work product. Those are private attorneys or public defenders? Does it make a difference? I don't think it makes a difference. You don't think so? I don't think a private attorney has a greater interest in the privacy of his work product than a public defender would. I think they're comparable. They're both attorneys for the clients. And if you had a public defender that was ineffective, wouldn't it be in the best interest of the public defender's office to know that? Well, certainly that is true, Your Honor. And we do believe that when there has been an allegation of ineffectiveness, either in a post-trial motion or a post-conviction petition, that is specific as to what an assistant public defender allegedly failed to do. How would the client know what he failed to do if he couldn't see the work product? I think most clients would have to have some idea what was wrong. For instance, if an individual wants to file a complaint with the ARDC against their attorney, they have to with some specificity say, I think my attorney acted improperly because of some reason. There has to be some reason given before an attorney needs to respond and defend what they did. And again, I ask, how can they do that without the whole file? I think that most clients and their attorneys can determine if something went wrong. I mean, for instance, if a client says I want to testify and he wasn't allowed to testify, he knows that. Or if he said I want my friend to testify as an alibi witness, he knows if his friend was allowed to testify. If he wasn't visited in jail, he knows he wasn't visited in jail. All these things are that clients do know and can't allege and can or are allowed to allege with specificity in their post-conviction petitions. But you acknowledge that there are things in those files that the clients don't know. I don't know that there are things that they don't know. I think what the cases indicate is that If they know everything, then why would you assert the privilege when I just hand over the papers? Because there is confidential information in our files. What confidential information? The attorneys are allowed to work with Confidential from your own client? Yes, Your Honor. Confidential from the own client. There are things in files which attorneys write in their files which should be able to be kept confidential from their client. Frank assessments about the client's own credibility, frank assessments about judges, the opposing counsel, witnesses, and so forth. That type of information should not necessarily Frank assessments of witnesses wouldn't be available to your own client? Again, there are various types of assessments that might be in the file and not all of them should be disclosed to the client. The cases have recognized there are really two main privileges, the attorney-client privilege and the work product privileges, which allow attorneys to keep things in their files. But those rules all talk about the other side, not disclosing it to the other side. Well, Your Honor, I will notice the Donovan case, which I cited in my brief, said that the attorney-client privilege is really much broader. And, in fact, many cases note that the attorney-client privilege is much broader. Excuse me, the work product privilege is much broader than the attorney-client privilege. And the Donovan case states that it can be sometimes a privilege that is invoked just by the attorney. There are a number of instances where an attorney may want to keep and may need to keep information confidential that belongs to his or her work product. Unlike the attorney-client privilege, the attorney has an independent privacy interest in his work product, is something that we read in many of the cases. Ms. Donovan, can I ask you a question? Yes. You described a process that, obviously, the public defender in the courtroom in this particular case must have been unaware of. I don't know if they were unaware of. How is it that your office disseminates to the assistants what they're supposed to do when there's a request for a trial file? There is policies and information that are disseminated through our chiefs to members of the staff. And what you're telling us this morning is that you're the person who's responsible for determining how much of that trial file gets turned over to successor counsel. And anything that's not turned over, you make a record or a log, and you give the party that's receiving the file that list so that he or she knows what's not being turned over so that they can take whatever action they believe is appropriate. That's typically what happens. I should clarify that, though. When we receive a subpoena, we do that because the rules provide in federal court and state courts when we need to provide a privilege log. Some instances, we just receive a consent from our client to turn over information. Are there any appeals from those circumstances? I have not seen any appeals from them, Your Honor, no. What about what happened in this case where the public defender basically just said, objection, it's work product? Are you made aware of that at all? Who makes that determination in the courtroom when a new attorney comes in, how much of that file goes to the new attorney? I'm not sure if I'm always made aware of these instances, but typically a request should come to me from the office as to what information is going to be turned over to a new attorney. How would you handle such a request? As I've just explained, either it's a subpoena or a request with a consent. I would either produce the non-privileged documents along with a privilege log, if it was a subpoena, or if it was merely a consent from the other attorney, we would produce the non-privileged documents along with anything else that the client waived their privilege to. For instance, attorney-client correspondence, medical records, school records, other things that might have some statutory protections.  Is there anything there is that's not going to be turned over in that situation? They would need to file a subpoena, which is usually what we would get, a subpoena. There are some instances where they've asked us for a subpoena for a privilege log, even though they haven't filed a subpoena. We have occasionally done that. So the only way that an attorney would know whether or not documents are being withheld would be in those instances where a subpoena is filed, which in this case happened. Right. Although no log, I acknowledge, was prepared in this instance. I do want to mention one other thing, and that is the state's representations regarding the ISBA's opinions. I think the Illinois State Bar Association has made it clear that Illinois is an end product state, and that is that the rules in the state of Illinois provide that a client may only or is only entitled to the end product of what an attorney has prepared, the actual pleadings, as opposed to the entire file, which is the rule in many other states. And many of the cases cited by my opponents are from other states where there is an entire file rule. But in Illinois, again, it's just an end product rule. The ISBA did note and footnote, too, that while its opinion concerned only a lawyer's duty under the Illinois Rules of Professional Conduct, these materials are often described in ethics opinions and court decisions as the work product of the lawyer. So I disagree with the state that the ISBA has rejected our argument. I do believe that the Illinois State Bar Association opinions very much support our argument. And the opinion which I cited was crafted 25 years ago, has not been changed or overruled. And, in fact, the Illinois State Bar Association just in 2012 reaffirmed its position that it took in its earlier opinion, saying that there are various types of materials like lawyers' notes, draft, research memorandum, and internal administrative documents that a lawyer need not provide either copies or access to the client. Do you agree that if the, in this case, public defender has an objection to turning over any part of its file to anyone, that it would be incumbent upon the public defender to make that objection known to the court? If a request has been made to the public defender's office? If a defense attorney wants a court file and, for whatever reason, the public defender doesn't want to turn it over, shouldn't the public defender be the party that's making that objection and bringing that to the court's attention? Well, what I've seen in many instances, Your Honor, is if we prepare a privilege log and the other attorney believes they're entitled to some of those documents, they'll bring a motion to compel. And we respond to the other side that's not getting the documents. Normally, that is what happens. A motion to compel is brought against the public defender's office if they believe they're entitled to some of the documents. Oftentimes, after we do a privilege log, there is no request for any further documents. And the new attorney just respects our right to keep some documents confidential. So you, in your log, you itemize what you're not going to turn over? Yes. Say, memorandum, date, generic, subject matter, memo to boss, whatever. Yes. And then if the substitute attorney wants that stuff, he can go back into court and say, no, no, I need this stuff, and then somebody will figure out, presumably the judge, whether or not it's privileged or not. Yes. But you still claim that all of that is privileged against your own client? Yes. Yes, Your Honor. And we do this because the cases, as I mentioned, recognize not only attorney-client privilege, attorney-client communication privilege, but a separate work product privilege. And it's true that only the client can assert an attorney-client privilege. And if a client waives the attorney-client privilege, the attorney must give over that correspondence. And we do that. But there is a separate procedure or a separate rule for work product, and that is attorneys do have their own independent right to privacy, an independent right to assert the privacy to the materials. And logically, it would seem to me, Your Honor, if the attorney, if the client, if it seemed to fall from the independent right that if an attorney has a right to withhold work product independently from the client, they must have a right to, at times, withhold that work product from the client. Otherwise, if the client waives the privilege or consents to the release of a file himself or anyone else, it would be irrelevant if the attorney consented or not. The attorney would always have to release the material if the client's consent was all that mattered. The attorney would not have an independent right. But that's not what the cases say. The cases do recognize an independent right to withhold work product, and that independent right belongs to the attorney. So on remand, let's say this case were remanded, what, in your judgment, ought to be done in order to ensure that the trial court can oversee the proper disclosure of the end product file in this manner as opposed to the entire file? If, Your Honor, if the, if a post-conviction petition is filed, and I have not actually seen the post-conviction petition in this case, but that was not, it's not something that I have in my file. Well, this case was pre-sentencing. Oh, I'm sorry, the pretrial motion. I apologize. Pretrial motion. The post-trial motion. Post-trial motion. I'm sorry. If it alleged some specific instances where the public defender failed to take an action he should have taken or took some improper action or in some way provided some ineffective assistance of counsel, we do believe at that time we would produce for the trial court the privileged documents to see what, if anything, in those documents relate to those specific claims. And if the judge believed there were some, those and those limited instances could be produced. But we would object to a wholesale invasion of the public defender's files, a wholesale invasion of their privacy, allowing private counsel to sift through, comb through the file in a type of fishing expedition to see if there was anything of interest there. Your Honor, we also are very concerned about the manner in which this, any decision you might write would be crafted. And that is. Do you want to be the fourth member of the panel? No. Well, no. But we're particularly concerned that some of the language used in the Dixon case, such as the work product doctrine does not bar Dixon's access to his own file, and that an open file policy should be adopted. We're hoping very much it's made clear that that only applies when there is a post-conviction petition pending, which alleges some specificity, or where there is a post-trial motion filed, which alleges at some threshold level some specific inaction of the public defender or some mistake that the public defender made. Wait. I'm sorry. I don't mean to get you off your flow of thought here, but how does that help a client who mid-trial says, no, no, no, I need a private attorney, gets the money together and hires a private attorney? You're saying after the trial, so the state, the defendant, the public defender, all have to go through the whole trial, and then there has to be a post-trial motion to say, oh, this attorney was ineffective. How does that make sense? Actually, what I was leading up to is that there are instances in our office where we are receiving requests for our work product where there is nothing pending in any case at all. For instance, just so that Your Honors understand some of the concerns that we have. So during trial, after trial, at the post-conviction stage, that's not what you're talking about. You're talking about when there's nothing pending and the defendant is just sitting around stewing because he lost. That's what I'm addressing you regarding right now and our concern about how the language might be crafted in your decision. Just so that you can gauge the seriousness of this problem from the Public Defender's Office, we received in the past 12 months, just in the past 12 months, we received over 200 subpoenas for our file. And in addition to that, 200 requests for our file from private attorneys. Now, in that latter category where we just received the request, we don't know that there is any case pending at all. There might not be any post-conviction pending. There might not be any federal case pending. These are simply attorneys who come in our office who want to look at our file, just to look through it to see if there's anything in interest there, to see if they might file a Section 1983 action in the future, to see if they might file a state court action, to see if anything might be relevant in any way. So what do you do in those instances? In those instances, we do share the non-privileged documents. And if they have a consent from the client, stating that we can share attorney-client correspondence, we do share that too. But we do not share work product. And I don't think that office — But you've defined work product very broadly. Well, I define work product as I think the courts define it, and that is core work product, the thoughts, impressions of the attorneys, their strategies, as written down in their notes. And I repeat again my question earlier. Isn't it a better public policy if there are a few ineffective public defenders that we find out about it? Well, I think the courts have been good at determining when any assistant public defenders have been ineffective. There certainly are decisions in the post-conviction context where courts do rule that an assistant public defender has been ineffective. So I think the courts have been good at performing that function. Well, if you make them file a post-conviction petition for ineffective assistance, which incidentally now we've been told they can file that in there during the trial, and they can file it during a direct appeal, it still means that they have to have an attorney who's willing to go that extra mile to find out what went wrong in this trial. Maybe nothing went wrong in it. Maybe everything flew perfect, and they just did it. So they got convicted. But isn't it a better public policy to say to defendants, presumably the ones that have lost, you have a right to see whether or not everything that could have been done was done as early as possible so that a post-trial motion can be made timely, so that the direct appeal can be done right, so that an attorney who's trying to find out whether anything was done wrong or wasn't done right knows about it and can make the proper motions or take the proper action? Isn't that a better public policy? No, Your Honor, because I think it runs in the face of the public policy that attorneys should be able to keep their work product confidential. Yes, Your Honor. I've noted that most of the requests we get to review files are from private attorneys who have a consent from our client. But sometimes the clients themselves want to review their file. And again, we allow them to look at non-privileged documents, although we must, under Supreme Court Rule 415, take out discovery materials, I think we are also entitled to take out our own work product. Our work product does enjoy its own protections, as recognized by Hickman v. Taylor and the long series of cases that have ruled in accordance with Hickman v. Taylor, recognizing an independent right that belongs to the trial attorney to keep their work product confidential. And I don't think that it's helpful, I don't think it is really in the best interest of clients to have attorneys who feel that they can only write down things that they would not mind having exposed to the client himself or to other outside attorneys at some point in the futures. I think there is a concern that attorneys who think that every thought or impression that they note on a file will someday be open to later public scrutiny will really be hesitant to write things down on files, hesitant to write down their own notes and thoughts, and hesitant to preserve that material for other trial attorneys in the office who may take over their file. The public defender acknowledges that clients do have the right to proceed on post-trial petitions and to allege ineffective assistance of counsel. But her position is that before the work product of the public defender is invaded, the petitioner needs to allege with some specificity what it is that the trial attorney allegedly did wrong, and then the trial court should conduct an in-camera review of those materials to see if they are related to the claim and to make sure they don't release irrelevant confidential material. Unless the court has any other questions, I'll just ask your honors to craft your decision, keeping in mind the interest of the law office of the public defender. Thank you. Briefly? Very briefly. Just with respect to the Dixon case, I think it's kind of a red herring. It's a different situation because there is no right to subpoena in post-conviction matters. Also, obviously with pro se defendants, and I think it's happened in the Dixon case, there is a redaction process specific to pro se defendants to prevent them from getting addresses, prevent harassment of witnesses, all sorts of things that are not applicable here. This was an attorney. I would agree with the public defender that work product privilege, I wouldn't say it's broader, it's different than attorney-client privilege. And the reason that we have a work product privilege is it's basically the idea is you don't let players from the opposing team come into your huddle. It just doesn't make any sense. Then they know what you're doing, they know what you're thinking, they can make their own moves, they can use your work. That's not fair and that's not right. That's not what happened here. An attorney representing the same client, Tiffany Elkins, wanted to be put in the same position as her predecessor attorney and to make claims of ineffective assistance if needed. And even without the file, he made very specific claims. That witnesses weren't interviewed, that visits weren't made, that expert witnesses weren't used. And he didn't have one single document to check to see whether what Mr. Justice said about what he had done was correct. That's not fair. We would suggest the proper course is to remand for a motion for a new trial with directions that the public defender's office provide the file. If the public defender has privileges, logs, or objections, I would suggest only that your honors rule definitively. Number one, there's a right to subpoena post-trial, which the public defender needs as much as we do. Second, that they cannot assert work product privilege. And third, that whatever other privilege they wish to assert should be done in writing with a privilege log and using some specific procedure. Thank you. All right, thanks to both sides, all three sides, I should say, for the very thoughtful briefs and great argument. It's a difficult but important issue, and we will be right on it and get back to you directly. We're adjourned.